on the calendar for March 10th. Judge Brasher and Judge Schoflat are in Jacksonville, and I am presiding from Miami. The first case on the calendar is Peter Hesser v. United States of America. Are counsel ready to proceed? You may approach the bench. Thank you. May it please the court, this case, like most 2255 cases, concerns the precious right that Americans have to the effective assistance of counsel for their defense in a criminal case. The district court found that counsel provided ineffective assistance, and on that basis found that it prejudiced the defendant as to three of the four counts involving tax charges. As to the fourth count, however, the district court felt that it could interpret the record in a way that would allow denying a Rule 29 motion as to that count, and that therefore counsel's failure to move for a judgment of acquittal did not prejudice Mr. Hesser. In making that ruling, and in resolving the related arguments that counsel was ineffective in his advice to the defendant, and in calling him as a witness, which essentially spoiled his possibility for success. Let me ask you this about the order of operation, you know, in assessing these arguments. It seems to me, and maybe I'm wrong, but it seems to me that if we agree with the district court, that there was no prejudice for the failure to make a motion for directed verdict, or judgment of acquittal, however you want to say it, because there was sufficient evidence to convict, then it doesn't really matter about the ineffective assistance of counsel claim regarding the testimony. Do I understand that right, or is there some independent issue with respect to the testimony that we would have to address even if we agreed with the district court on the first issue? There is a separate body of law with regard to the defendant's right to have effective assistance of counsel in making the decision whether or not to testify. The relief would be different. So, yeah, what, I mean, play that out for me, I guess, because I'm having trouble with that. So, if we said that at the end of the government's case in chief, there was sufficient testimony to convict, then once we get to him deciding to testify in his own defense, would we not necessarily say that that was, that didn't matter because the government had already sufficiently proven its case? My understanding of Teague and of the other decisions that this court has in that separate body of law with regard to the independent decision of the defendant whether to testify, is that that is a separate, separate area in which the, in a separate body of relief. In other words, even if this evidence had been sufficient, if the defendant was caused to testify and clearly increased the evidence against him and thus increased the likelihood that the jury would find him guilty based on wholly ineffective assistance of counsel, then that would be a constitutional error. It would have been a Sixth Amendment error affecting his Fifth Amendment rights. But the relief would not be to vacate the conviction on count four. The relief would be to demand for a new trial or to grant a new trial on count four. That's my understanding of the law. The reason being that just as if any other situation, the counsel confused the defendant as to whether he had a right to testify, exactly the same relief applies. And that's essentially what happened here. And it's important when we talk about that advice that the advice to the counsel is that count four, under this theory, under Your Honor's theory, Judge Brasher, that there would be a way to find sufficient evidence on count four, a very circuitous route, I might suggest, to find that. But if that were the case, this still would have been insufficient evidence on three of the counts. And there would have been arguments the defense could have made. Had counsel even given the barest of correct advice to the defendant with regard to exactly how weak the case was as to count four, and in fact that there was insufficient evidence as to the three most serious counts that carried the most serious financial penalties. There really was no financial penalty for count four. All of the financial penalties were related to counts one through three. Those I assume, I mean, and this is a substantial record, but I assume that if there are penalties that were keyed to counts one, two, or three, then those penalties have gone away because of the district court's ruling on those. Again, and this is the... I mean, is that correct? Yes, and I think that I'm trying to address what it might seem artificial to create this sort of bubble around the right to testify and treat it as a separate thing that must be protected independently of prejudice to the outcome of the case. In this case, we have that plus we have prejudice to the outcome of the case. In other words, assuming that count four was sufficient, and I think that there really, when you look at the record, the things that the district court is citing to say it would have found sufficient evidence on count four really pertain to defense evidence, such as all of the evidence about the trust and all of that stuff comes out, the inculpatory part of that stuff comes out during the defendant's testimony. The most inculpatory... Would you answer this? So I read the testimony of the wife testifying for the government, and it would seem to be, you know, I mean, maybe I'm wrong, but that seemed to be the best evidence the government had on these issues came from the wife. And she testified that he hid the gold in the house and told the children, you know, like, don't answer the door for the IRS. He was worried about tax authorities when he hid the gold in the tax liabilities were being assessed and he was being audited. Just specifically on that testimony from the wife, why wouldn't that be sufficient for a jury to come back and say that he either did evade or attempted to evade taxes? Well, there are separate points, of course, and with regard to the house, the testimony was... The government's argument was, oh, right after he had a meeting where he learned that they were going to require him to pay such and such, he could claim the deed. And that's what the district court found also. That's not true. What she said, and she was very precise about this, she said he was going to meetings around in the spring of that year, and he learned in those meetings about mortgage fraud issues. And he explained he wanted to move the money into a trust, the home into a trust for mortgage fraud issues. So her testimony was certainly insufficient to prove beyond a reasonable doubt that he was even trying to. He even had it in his mind to do that. Circumstantial evidence can go a little ways, but it can't go that far when the direct testimony offered by the government is the exact opposite reason for the purchase and when the timing explanation they come up with now simply is not satisfied by the record. It's the opposite. The other thing about the house, of course, is that... And the trust as well, is that the government, I believe, admitted that these were not types of things that were successful. In other words, he's not attempting to do something that would defeat the tax. He's attempting to do something that they say could have been in his mind would have defeated the tax. And when you get to that level of extrapolation of attempt, you need to have acts that are in and of themselves so marked by criminality that assuming you have the abundant mens rea evidence, it is corroborated by the criminality of the act itself. And certainly with regard to the house, we know that's not true because the wife completely contradicted that theory. With regard to the trust, the evidence in the direct part of the case was he had been buying gold and had been managing... Had been buying gold for the trust for a long... For the trust and for other assets for a long time. So that the purchase of the trust, which is the allegation, not hiding of money in the house, it's not an allegation, but the purchase of the gold, which is an activity that the wife's testimony says was a pattern he had always engaged in and which still I do not see even as a logical matter how that can amount to a violation, even if there were the corroboration required under Oviedo and all the other attempt cases in this court. The record is so spoiled when one tries to look at it. And even I, I've been involved in this case, seems like a decade. It's still because and I believe Judge Joe Flats has been handling this case for a long time as well. But the impact of the defendant's testimony is there's no question that that is... You have an attorney who completely failed to see that there was a failure of proof, even though the judge at the time of the close of the government's case said it had problems with count four. It didn't have any problems with count three, which were insufficient, which he later recognized were insufficient. Even at that time said he had problems with count four. So that this, this is a very special case. It's obviously the defendant has served his sentence and we'd ask the court to grant relief in this case. So really quickly before you sit down. So I mean, that was it. So the issue in this case really is the 200 some odd thousand dollars of penalties or is that... No, we... What is kind of remaining, I guess, for the... Nothing is remaining. Okay. So it was just a... I don't have a, I don't have a... Would we not, if we vacate, if we reversed, would his, would that sentence not be expunged or vacated? If we vacated, it would be there forever. I mean, he'll, it's, it's just that he, he would not have, he would not be a felon. Okay. But I mean... There's no financial, I'm sorry, no financial penalty associated with count four anymore. There was a correction to that. There was never supposed to be a financial penalty associated with count four. So the only thing associated with count four then was the, whatever, I forget how long the sentence was, but the sentence that he served. And it's been served, yes, Your Honor. Okay. All right. Good morning, and may it please the court, Linda McNamara for the United States. Of course, it's not ineffective of counsel to fail to file a motion if the motion was due to be denied.  Or a motion for a judgment of acquittal. And we know for a fact here that the district court would have denied a motion for a judgment of acquittal because the same district court judge who presided over the trial ruled on the 2255 motion and ruled that he would have denied a motion for judgment of acquittal. So the only question now is whether that decision would have been affirmed on appeal under an ordinary de novo standard of review. Which he didn't have, of course, because his counsel didn't make the motion in the first place. So let's look at what his motion said with respect to the tax evasion count. Most of his motion was directed to the false statement counts and those false statements as acts of tax evasion. And he got relief on those counts. Those are the counts that the district court granted him relief in his motion. But as to these acts of evasion, the gold purchase and the transfer of his home to a trust, his motion said only that the theory of evasion was too ambiguous because it rested on what could be lawful actions. That would not have entitled him to a judgment of acquittal if his counsel had asserted his motion on those grounds. Because, of course, lawful actions can constitute acts of evasion if they're done with intent to evade taxes. So that, in and of itself, should resolve that first question in the certificate of appealability. But if this court does go further and look at whether the jury could have inferred from the government's evidence in its case-in-chief alone that Hesser's otherwise lawful actions constituted acts of tax evasion, he's still not entitled to a leave. Evidence in the government's case-in-chief showed that Hesser was attending weekly tax protester meetings for many years. And with the IRS breathing down his neck, showing up at his door, sending him assessments, and scheduling him for meetings, he transferred title of his home, his residence, to a trust that his wife knew nothing about. And he began buying gold bullion and hiding it around his house, telling his wife he was hiding it so the IRS couldn't find it if they came in. He did those things while, at the same time, refusing to even be interviewed by the IRS or to provide any information that they asked for, and sending the IRS frivolous letters claiming he had no tax liability and didn't even have to file a tax return. Evidence of this five-year battle that he was having with the IRS viewed in light most this court would have had to do on direct appeal was sufficient to establish that he was not entitled to a judgment of acquittal at the close of the government's case without considering anything that came in during the defense case. Can you answer a question for me about the government's case? I thought a strong point that the petitioner made was that with respect to the purchases of gold, that it's not even clear that he was purchasing gold with money that was his money. It was trust money that didn't necessarily have any tax obligations on it anyway. What do you say about that? Well, I mean, number one, that's an argument. That's a jury argument. Number two... So on that, I don't want to cut you off. I want you to go through your points. But on that issue, is there any evidence in the government's case in chief that would his own money? Well, the wife testified that she always understood that his investments were with his own money. And she testified that he was always making investments for income to support the family. So what you're suggesting is that you have no actual evidence other than the wife's testimony that this money came from his own personal account and it was not commingled or was not trust money? I think that's true. I do. I think that's right. There was no forensic accountant. There was nothing that where you could show where this money came from. That's correct. There wasn't. That's right. Well, and then the reason, I guess, is because you just found a bunch of gold in the guy's house. I mean... Well, we found a bunch of gold in the wife's house. Well, he said he didn't want the government to find it. Exactly. I mean, if it was somebody else's gold, it wouldn't make any difference. That's right. And there was no evidence that this trust, this family trust, was being investigated by the IRS or he had any concerns about taxes for this trust. I mean, the most telling argument, of course, to evidence was the wife's testimony, that he was hiding it from the IRS. And I think the jury could reasonably infer from that, that at least he thought those were assets that the IRS could take in this battle he was having for his own personal tax liability. So you're right, Judge Lagoa. There was no direct evidence of where the money came from that, but there was evidence that he thought it was something that he was trying to keep from the IRS. That's evidence of tax evasion. What was the second point? I cut you off when you said you had... I think I was just going to refer to the wife's testimony about that. And I did want to kind of go through the timing of all these things and the evidence of that that came in only in the government's case. Now, the wife testified that she didn't recall exactly when the house had her sign over this deed to their house, but she agreed that it was in early 2006 or the spring of 2006. That's consistent with what's shown in the IRS records. Those are government's exhibits 43 and 39, that actually there are notations in those records saying that the owner of Hesser's residence is Michael Harris and Hesser 41 Family Trust. Quote, conveyance occurred on April 6, 2006. Clear transfer of asset was made after accrual of tax liability. So we have a date of when the transfer occurred. And we know from the wife that it occurred in early 2006. Now, what was going on around that time and leading up to it? For one thing, he was refusing to pay taxes and being combative and uncooperative with the IRS. Now, the evidence showed that he failed to even file a return in 2001. The IRS prepared this substitute for return for him in 2003. And in response, that's shown in government exhibit 16. In response to that, he sent a letter on April 8, 2004, denying that he had any tax liability or even had to file a tax return. So we have him being combative with the IRS in as early as 2004. His efforts to stonewall continued into 2005. Agent Blau testified. She sent him a letter telling him he was being audited and to schedule an appointment and that he didn't respond to that. She testified that consequently, she scheduled an appointment for him for February 25, 2005, but he didn't show up. Now, his wife recalled that it was around this time that he was attending these tax protester meetings at the 2012 trial. She testified that he began going to those weekly meetings more than six years ago. So that would be sometime before 2006. Now, as we're getting closer to the date of this deed, the IRS starts to pin down exactly how much money he owes. And on January 25, 2006, they send him a letter telling him he owes more than $70,000. And when he didn't dispute that, the IRS actually assessed those taxes on April 3, 2006. Now, I do need to make a correction, something that I said in my brief I realized last night wasn't correct. And that is I have the liens being filed on April 3, 2006, and that's not correct. It was unclear to me from the testimony of the revenue officers, and I realize I misread it. What happened on April 3, 2006 was that he was actually assessed these taxes for 2001, 2002, and 2003. That is actually billed for that amount. The liens weren't actually filed until the next year, spring of 2007, March and April of 2007. And all those dates are shown on government's exhibit 16, 17, and 18. But regardless, this all puts in context the transfer of the property that occurred by the deed in April of 2006. And of course, the wife said he did that because of information that he got at tax protester meetings. I mean, didn't she also say that he did that because he thought he could avoid his mortgage payments if he put it in a trust? Yes, she did. But I think it was very clear from her testimony that he was keeping her in the dark about a lot of things. And I don't think that that's the be-all, end-all of why he did that, given the timing and the context over this five-year span of his battle with the IRS. She may have believed that. He may have told her that. But I don't think we have to necessarily take that as the true reason. The jury certainly didn't have to, given her testimony that he was not letting her open letters, didn't want her to know what was going on. Now, if that had been the only act of evasion, that would have been enough to survive a motion for a judgment of acquittal. But then, of course, we also had the gold purchases. And the wife confirmed those occurred around 2006 or 2007, at a time that Hesser had known for years of his tax liability and had been not denying that liability. March of 2007 is when the IRS demanded payment and filed the tax liens. Revenue Officer Lewis testified she showed up at his door on April 3, 2007. And he refused to let her in, refused to talk to her, refused to provide any information that she asked for. She told him that enforcement action would begin if he didn't appear for a meeting. He did finally appear for this April 30, 2007 meeting, where he was confrontational, combative, uncooperative. The recording of that meeting was in evidence as government's Exhibit 42. So the jury could hear from Hesser's own voice how he was treating the IRS and how he felt about the situation. This all puts in context what's going on with the transfer of the deed and the purchases of the gold. Also in evidence were letters that he sent to the IRS. Those are government's Exhibits 30, 41, and 44. As were, as I've mentioned before, the Revenue Officer's notes describing the frivolous correspondence that he'd been sending to them. That's government's Exhibit 43. The wife, and to your question, Judge Brasher, about the origin of the money or the gold or whether it was for the trust, the wife testified also he would sell some of that gold for investments, including an investment in her business so she could start a tutoring business. All that is evidence from which the jury could infer that these were assets he was treating as his own and were trying to prevent the IRS from getting. Those were willful acts of tax evasion and the jury certainly could have inferred at the close of the government's case that he had committed those acts for that purpose. He wouldn't have been entitled to a judgment of acquittal, nor he would have been entitled to relief on appeal. Now, with regard to the second two issues with respect to his being called as a witness and being misadvised of the effect of his testimony, Judge Brasher, I agree with you. That the sufficiency of the government's evidence, I think, for the most part, resolves that question. I think he might have come up with an argument that it was close call and I said so many things in my case that that probably reasonable probability that that swayed the jury, but that is not what he argued. Again, his argument on this count, on count four, was insufficient to even merit an evidentiary hearing. So what did he allege? He said his counsel failed to advise him that his own testimony could fill evidentiary gaps and failed to advise him how testifying could adversely affect his appeal. But what he didn't explain was the supposed deficiency in advice on the hazards, how that caused him prejudice. He didn't say what holes in the government's case his testimony filled as to the tax evasion count. And that's what he has to do in order to merit a hearing, much less relief. His allegations were far less specific than this court has found insufficient in Winthrop Redden and Price versus Allen. They were much like the conclusory allegations in Lynn versus United States, where the defendant submitted affidavits, actual affidavits from prosecution witnesses saying they had conformed their testimony to other witnesses' testimony, that the government had been involved with this, and the government knew that they were testifying about information the agents had given them and not based on personal knowledge. Despite those allegations, which were pretty specific, this court held that Lynn's new claim of prosecutorial misconduct still fails on the merits because the 1999 affidavits contain no more than conclusory allegations. The affidavits do not name any government agents or investigators, do not give details or a single example of what testimony or statements were tailored or conformed to be consistent or based on information fed from government agents. The court ruled in that circumstance that no hearing was even required. The allegation here that he just wasn't advised properly on the hazards of testifying and that filled gaps in the government's case were far less specific than those allegations. Consequently, the district court correctly denied his 2255 motion without a hearing, and he's not entitled to relief in this appeal. Any other questions? Thank you, counsel. Thank you. Thank you for your argument. Thank you. Counsel, you have five minutes remaining for rebuttal. Thank you. Thank you. The testimony was absolutely unequivocal that these funds came from the trust that the author to purchase the gold, the author. Can you tell us, can you tell us where in the record do you have a specific site for us? I go over it in some detail in pages 15 to 16 of the, I guess it's the reply brief because this argument came up in the government's brief, not as I see it in the district court. The argument in the government's brief is that, oh, well, the trust could have, it could have, we could have gotten the trust. We could have gotten the assets. Cheryl Hester testified that what happened was that his brother, Frank Hester, was the trustee of the trust. He owned, the trust owned a property in Charlotte County. He had to obtain, this is the wife's testimony as a government witness, he had to obtain authorization from the brother to negotiate a sale of the trust of the property in Charlotte County so as to invest it in the gold. That there was never a suggestion by the wife that any of these investment decisions were undertaken to, for that, for the purpose of defeating the, any tax liability, nor could they have been because it was undisputed that these were trust assets. The government never made any attempt to show that they belonged to anybody other than the trust. That alone made their case insubstantial on whether this was an act that would evade taxes. If they had wanted to charge hiding gold, they could have charged hiding gold. I don't know that that's going to hold up. I don't know of any case out there that says the defendant evaded taxes because he put all his money under the mattress. I don't know of a single case in the history of the United States or in 110 years since the amendment allowed income tax where that has been the case. People are allowed to put their money under the mattress and hope nobody finds it. That's fine. You know, the over-criminalization of life is part of this case as well, in addition to the fundamental Fifth and Sixth Amendment issues. The second component of this, of the argument is, again, the house. This is the marital residence. This is something that would not have been, the government never even showed that the tax in the first place. They couldn't have collected on the house in the first place. The government could not have. Putting it into this trust on a, you know, it didn't destroy whatever interest, the pre-existing interest the government had. It did nothing to affect their interest. Both of these things did nothing to affect the government's interest. The witness for the government said neither of these things were directed towards defeating the government's interest. His interest, yeah, once he's gotten things, yes, what did he do with them? He doesn't want the IRS to get them. That's true. But the decisions to invest had nothing to do with the IRS. That's the government's case. They build the different case when he testifies. To say that our allegations in the 2255 about him filling evidentiary gaps in the case is somehow confusing and the government was absolutely lost when they saw our 2255 is completely refuted by their response. It's simply not true. The case was decided on the basis, on the erroneous factual basis that the defendants, elements of the defendants testimony that Judge Steele in this case was mistakenly relied on was sufficient to pull the government across the finish line. It didn't pull the government across the finish line. Instead, at a minimum, the defendant, the ineffective assistance that the district court recognized even as to count for, the district court recognized that this lawyer was ineffective as to count for. To me, the if-so facto there is there must at least be relief on the decision to present the defendant's testimony, not to advise him of the insufficiency. It's not the opposite. It's not that the district court finally decides that even though it was ineffective assistance, I'm not going to grant relief because of the reliance on the defendant's testimony itself, which is, again, a circular way of handling it. So before you sit down, the government argues in its brief that, you know, let's just assume that you're right about the gold coming from the trust and the putting the marital residence in a trust wouldn't actually defeat any tax liability. You know, the government says, yeah, but he was charged with evading or attempting to evade. And the government says, well, these were attempts. You know, he didn't really know this. He was just attempting. What do you say about that? Well, I mean, I remember a case that years ago I had with Judge Birch decided he was the presiding judge and he had been a tax lawyer. And the issue was, and I think Judge Birch put in the opinion, certainly my brief is I could want to defeat taxes as much as possible. I mean, I can just hope everything I do, I can hope that, you know, I can charge the emotional stress of oral argument as a deduction. I can do all of that. But that's not criminal. Wanting ain't getting. You've got to do something. And when it comes to an attempt, you've got to attempt something that in itself is marked by criminality. That is Oviedo, Monduhano, all of the courts in this old Fifth Circuit's decisions about attempt. You can't say he did an investment that his wife said was perfect, two investments that his wife said was perfect, and say that corroborates sufficiently under this court's attempt precedent. Thank you. I'm sorry for the extra time. Thank you. Thank you so much, counsel. Thank you both for your arguments. Very interesting case.